# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARLAND JASON LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-194-JAR |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Plaintiff Garland Jason Lewis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42

U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias,

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

933 F.2d at 800-01.

## Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a construction worker and surveyor helper. Claimant alleges an inability to work beginning March 31, 2021 due to limitations resulting from seropositive rheumatoid arthritis of multiple joints, gout, chronic obstructive pulmonary disease ("COPD"), pes planus deformity, major depressive disorder, and anxiety.

## Procedural History

On April 5, 2021, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 26, 2022, Administrative Law Judge ("ALJ") J. Leland Bentley conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On December 19, 2022, the ALJ issued an unfavorable decision. On April 18, 2023, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from severe impairments, he retained the residual functional capacity

("RFC") to perform light work.

## Error Alleged for Review

Claimant asserts the ALJ erred in (1) failing to apply the correct legal standards when assessing the medical opinions of record creating error at step five; and (2) failing to properly assess Claimant's subjective statements.

## Evaluation of the Medical Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of rheumatoid arthritis, polyarthritis, osteoarthritis of the bilateral hands, ulnar deviation of the fingers of the bilateral hands, bilateral pes planus, and COPD. (Tr. 17). The ALJ found none of Claimant's alleged conditions met a listing. (Tr. 20). As a result of the limitations caused by his severe impairments, Claimant was found to retain the residual functional capacity to perform light work. (Tr. 21). In so doing, the ALJ found Claimant could occasionally climb ramps and stairs, could not climb ladders or scaffolding, could occasionally balance, stoop, kneel, crouch, and crawl, could occasionally reach overhead and frequently reach in front and/or laterally, could occasionally handle bilaterally, should avoid even moderate exposure to dust, fumes, odors, and poorly ventilated areas, should avoid unprotected heights and dangerous moving machinery, and should avoid exposure to temperature extremes. (Tr. 21).

After consultation with a vocational expert, the ALJ found Claimant could not perform his past relevant work at step four. However, he could perform the representative jobs of assembly-machine tender and telephone solicitor, which were found to exist in sufficient numbers in the

national economy. (Tr. 27). Consequently, the ALJ concluded that Claimant had not been under a disability from March 31, 2021 through the date of the decision. (Tr. 28).

Claimant contends the ALJ improperly evaluated the psychological opinion provided by Dr. Ryan Scott. Dr. Scott recorded Claimant suffered from the severe impairment of inflammatory arthritis but recorded that the mental disorders of depressive, bipolar and related disorders as well as anxiety and obsessive-compulsive disorders to be non-severe. In the "B" criteria, he determined Claimant was mildly restricted in the ability to understand, remember, and apply information and concentrate, persist, or maintain pace but not restricted in interacting with others and adapting or managing oneself. (Tr. 108). While Claimant states in the briefing that Dr. Scott set out in the record that Claimant "presented as tearful and suffered from depression and anxiety with chronic pain," this Court cannot find this reference in the transcript on the page set out in the briefing at Tr. 108. The ALJ references a visit to the Caring Hands Healthcare Center with Stacy Scroggins, PA-C meeting with Claimant that he appeared "tearful today." (Tr. 774).

The ALJ recognized Dr. Scott's conclusion that Claimant suffered from no severe mental impairment and found it "largely persuasive." While he found it was not entirely supported by "the evidence cited," it was consistent with the preponderance of the evidence in the record. (Tr. 17). The ALJ then concluded Claimant did not allege any mental impairment and, while Claimant stated that he was treated for bipolar disorder, no such diagnosis was made by an acceptable medical source. Id.

The ALJ noted Claimant's various visits for mental health treatment. He also found that

Claimant "rarely, if ever, subsequently complained of mental symptoms or requested mental health medication adjustment. (Tr. 18). The ALJ then proceeded through the paragraph "B" criteria, finding only mild limitations in three of the four functional areas and no limitation in the fourth. (Tr. 19).

Because Claimant filed his claim after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors

were considered.  Id.  However, if the ALJ finds "that two or more  medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]"  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); *see also* Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

While Claimant challenges that the ALJ made a proper evaluation of the supportability and consistency of Dr. Scott's opinion, this Court disagrees.  By proceeding through the paragraph "B" criteria and references in the record supporting Dr. Scott's findings on each of the functional areas, the ALJ addressed the supportability and consistency of Dr. Scott's findings through other medical records.  Claimant also raises an issue regarding Dr. Scott's finding that Claimant did not receive pharmaceutical treatment prior to the date last insured, which is reported in Dr. Scott's report as June 30, 2021.  (Tr. 110).  The importance of this issue is minimal and not the focus of Dr. Scott's findings.

Further, this Court does not read the ALJ's findings as a "lay analysis of the medical evidence." His findings find support in the medical record. This Court concludes that the ALJ did not err in his evaluation of Dr. Scott's psychological opinions.

Claimant then provides a litany of alleged bases for reversal and remand. He asserts that he suffered from tachycardia, shortness of breath, and an abnormal EKG without stating how these conditions provide for a functional limitation in the ability to engage in basic work activities. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The same may be said for inflammation, gout, chronic joint pain, COPD and finger tenderness. The ALJ provided for these conditions in limiting the RFC to occasional handling and avoiding conditions which would exacerbate Claimant's COPD, which was currently stable with medication.

Claimant also contends the ALJ did not properly evaluate the state agency reviewing physicians' opinions – those of Dr. Herbert Meites and Dr. Fizzeh Nelson-Desiderio. The ALJ

found these opinions "largely persuasive" and "largely supported by the evidence." (Tr. 26). The ALJ discussed the consistency of the opinions with the medical findings on Claimant's COPD and rheumatoid arthritis. Id. While more specificity in the support and consistency analysis would be helpful to the Court's analysis, it cannot be concluded that the ALJ's findings are erroneous requiring remand.

Claimant also asserts that the state agency physicians' opinions are in direct conflict with his treating physician's findings on his rheumatoid arthritis. However, the findings of Dr. Wagner only "suggested" a poor prognosis due, in significant part, to Claimant's continued tobacco abuse. He was also equally hopeful that "aggressive" treatment would his arthritis to be "controlled in the near future." (Tr. 563). This subjective statement does not challenge the consistency of the state agency physicians' opinions.

Finally, Claimant states that remand is required to determine if the representative jobs identified by the ALJ exist in sufficient numbers. The vocational expert identified 25,000 assembly-machine tender jobs in the national economy and 43,000 telephone solicitor jobs. (Tr. 27). The Tenth Circuit in Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992) did establish that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Trimiar at 1330. Rather, an ALJ must explicitly set forth a discussion of the factors identified above in determining that the number of jobs a claimant can do exist in significant numbers and an ALJ's finding is sufficient if the record supports a conclusion that the ALJ used a commonsense approach in "weighing the

statutory language as applied to a particular claimant's factual situation." Johnson v. Colvin, 2014 WL 4215557, 3 (W.D. Okla.). Given the imprecise nature of this analysis, this Court is unwilling to find that 25,000 and 43,000 represent an insignificant number of jobs. *See*, Rogers v. Astrue, 2009 WL 368386, 4 (10th Cir.)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability). Since at least one job exists in sufficient numbers which is not in conflict with the DOT, the ALJ had substantial evidence to support his step five determination.

### Evaluation of Claimant's Subjective Statements

Claimant challenges the ALJ's assessment of Claimant's subjective statements. The ALJ found several instances of inconsistencies in Claimant's statements with his activities. Travel and performing manual labor were found to be inconsistent with Claimant's stated level of limitation. (Tr. 25). These findings are proper inconsistent evidence to discount Claimant's reliability.

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. R. 16-3p at *1; *see also* Sonnenfeld v. Comm'r, Soc. Sec. Admin., 2018 WL 1556262, at *5 (D. Colo.

Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the Social Security Administration now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; *see also* Sonnenfeld, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .
>
> Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at *3. In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.
>
> Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)).

Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. Keyes-Zachary, 695 F.3d at 1166–67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and

courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. See Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

The ALJ in this case met his obligation to tie the evidence to the inconsistencies he found in Claimant's statements. Claimant contends the ALJ improperly considered non-compliance with medical treatment without proceeding through the analysis of 20 C.F.R. § 404.1530. However, as Defendant indicates, the ALJ did not deny benefits on the basis of non-compliance but merely used the fact of non-compliance in his evaluation of Claimant's subjective statements. He was not, therefore, required to engage in the suggested analysis.

Claimant also contends the ALJ's evaluation of Claimant's pain was improper. The ALJ

considered the intensity, persistence, and limiting effects of Claimant's pain throughout the opinion, including inconsistencies in the Claimant's statements on pain.  He found Claimant was without his medication for arthritis for a week and a half and his pain came in intermittent "flare-ups." (Tr. 23).  The ALJ adequately considered the nature and effect of Claimant's pain in his evaluation.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE